UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CONNIE LYNN BOND,                    )
                                     )
         *Plaintiff*,                )    No. 1:15-cv-204-TRM-SKL
                                     )
v.                                   )
                                     )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
         *Defendant*.                )

## REPORT AND RECOMMENDATION

Plaintiff Connie Lynn Bond ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 17 & 22] with supporting briefs [Docs. 18 & 23]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 17] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 22] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her applications for DIB and SSI on June 8, 2010, alleging disability beginning on November 30, 2009 (Transcript [Doc. 11] ("Tr.") 273-76, 277-83). Plaintiff subsequently amended to allege disability as of September 1, 2010 (Tr. 25, 54-55, 68). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing

before an administrative law judge ("ALJ") (Tr. 122-27, 130-35, 136-37).[1] ALJ Jeannie S. Bartlett held a hearing on December 19, 2013, during which Plaintiff was represented by counsel (Tr. 25, 45-46). The ALJ issued a decision on April 10, 2014, finding Plaintiff was not under a "disability" as defined in the Social Security Act ("Act") (Tr. 25-35). Plaintiff timely requested that the Appeals Council review the ALJ's unfavorable decision (Tr. 1). On June 6, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born in 1967, has a tenth grade education, and is able to communicate in English (Tr. 33, 54, 273, 277, 304). Her past work includes as a house cleaner and kitchen helper (Tr. 56, 65-67, 77).

### B.     Medical Records

Plaintiff alleges disability due to pain in her back, neck, shoulders, right hip, and right knee (Tr. 355). Only certain portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective sections of the analysis below, but all pertinent records have been reviewed.

---

[1] At the time of the first scheduled hearing, November 17, 2011, Plaintiff was not represented by counsel and failed to appear at the hearing (Tr. 98-99). After Plaintiff also failed to respond to a good-cause for no-show letter, ALJ Ronald Feibus dismissed Plaintiff's case on December 9, 2011 (Tr. 98-99, 108-12). Plaintiff requested review of the dismissal indicating that she had notified the Commissioner of her change of address, but the hearing notices and good-cause letter were sent to Plaintiff's former address (Tr. 114). On February 28, 2013, the Appeals Council vacated the dismissal and remanded the case for a hearing and decision on the merits (Tr. 113-15).

### C. Hearing Testimony

At the December 19, 2013 hearing, Plaintiff and a vocational expert ("VE") testified (Tr. 45-89). While the transcript of the testimony at the hearing has been reviewed, it is not necessary to summarize all of the testimony herein. As needed, portions of the testimony will be addressed within the respective sections of the analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.      The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2015 (Tr. 27). At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since September 1, 2010, the alleged onset date (Tr. 27). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and major depressive disorder (Tr. 27-30). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 30-31). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to two hours of standing or walking per eight-hour workday; no climbing ladders, ropes, or scaffolds; can frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; can have superficial contact with coworkers and the general public; limited to simple, routine, and repetitive tasks (SVP-1 to -2); and requires a low stress work environment.

4

(Tr. 32).

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 33).  At step five, the ALJ noted that Plaintiff was 42 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 and then subsequently changed age category to a younger individual age 45-49; had a limited education; and was able to communicate in English (Tr. 33).  The ALJ found that the transferability of job skills was not at issue because Plaintiff's past relevant work was unskilled (Tr. 33).  After considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("Grids") as a framework for her decision and considering the testimony of a VE, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 34).  These findings led to the ALJ's determination that Plaintiff was not under a disability as defined by the Act at any time from the alleged onset date, September 1, 2010, through April 10, 2014, the date of the ALJ's decision (Tr. 34-35).

## IV.    ANALYSIS

Plaintiff alleges the Commissioner failed to meet its burden to establish there were jobs existing in substantial numbers that Plaintiff could perform.  Plaintiff also contends there is new, material evidence that should be considered and thus a sentence six remand pursuant to 42 U.S.C. § 405(g) is appropriate.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted).  Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Hypothetical Questions and Other Work Finding

During the hearing, the ALJ presented multiple hypothetical questions to the VE, including one that contained all of the limitations of the RFC (Tr. 78-83). Based in part on the ALJ's limitation of standing and walking for two hours in an eight-hour workday, the VE testified that Plaintiff could perform sedentary, unskilled jobs (Tr. 78-79, 82).[2] After considering the additional non-exertional restrictions that the ALJ placed on Plaintiff, the VE reduced the occupational base by 25% and determined that approximately 110 different occupations or job titles remained (Tr. 82). These job titles included inspector checker, check weigher, and hand mounter (Tr. 82-83).[3] As a result, the ALJ found there was other work that Plaintiff could perform that existed in significant numbers in the national economy and thus she was not disabled (Tr. 34).

Plaintiff argues that the hypothetical question presented to the VE by the ALJ in support of the ALJ's RFC determination was insufficient because it failed to address Plaintiff's

---

[2] Sedentary work involves lifting no more than 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, standing and/or walking for a total of no more than approximately 2 hours of an 8-hour workday, and sitting for approximately 6 hours of an 8-hour workday. *See* 20 C.F.R. §§ 404.1567(a) & 416.967(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (1983).

[3] The parties agree that the ALJ mistakenly identified in her decision the occupations of small parts assembler, decal applier, and folding machine operator as examples of sedentary jobs that Plaintiff could perform (Tr. 34). [Doc. 18 at Page ID # 1047 n.1; Doc. 23 at Page ID # 1102 n.3]. As identified by the VE during the hearing, these occupations are light exertion (Tr. 80-81). The VE testified that there were 110 sedentary occupations that an individual with Plaintiff's RFC determination could perform and identified representative examples of those occupations, including an inspector checker, check weigher, and hand mounter (Tr. 82-83). Based on a review of the entire record, these representative sedentary, unskilled occupations are clearly the ones that the ALJ intended to include in her decision, and her scrivener's mistake is nothing more than harmless error and does not justify a remand.

7

limitations in stamina from chronic pain and a major depressive disorder that at least moderately limited her ability to complete a normal eight-hour workday and workweek [Doc. 18 at Page ID # 1055]. Plaintiff claims the ALJ did not include in the pertinent hypothetical a finding contained in the mental RFC assessment by state agency psychological consultant Michael Neboschick, Ph.D. that Plaintiff had a moderate limitation in "'[t]he ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods' (Tr. 732)." [Doc. 18 at Page ID # 1056]. Plaintiff further contends that "the ALJ's failure to even discuss this important DDS Summary Conclusion [found in Section I of the mental RFC assessment] demonstrates that [the ALJ's] only relevant hypothetical question to the VE didn't and couldn't have included consideration of this very important limitation because [the ALJ] had not considered it as of the Plaintiff's December 19, 2013, hearing and didn't discuss it in the Opinion" [*id.*]. Plaintiff argues that the hypothetical question presented to the VE was inaccurate and the Commissioner failed to carry her burden at step five of the sequential evaluation process as a result [*id.*].

In September 2010 at the initial level of consideration of Plaintiff's claim, Dr. Neboschick completed a psychiatric review technique form (Tr. 717-30) and a mental RFC assessment form (Tr. 731-34). He stated that Plaintiff's affective disorders and anxiety-related disorders resulted in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 717-29). In Section I of the mental RFC assessment, Dr. Neboschick checked the boxes that Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; moderate limitations in her ability to

maintain attention and concentration for extended periods; moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and moderate limitations in her ability to respond appropriately to changes in the work setting (Tr. 731-32). In Section III of the mental RFC assessment, Dr. Neboschick opined that Plaintiff was able to understand and remember simple instructions; sustain attention for simple, structured tasks for periods of two hour segments; adapt to changes (noting it would be best if they were infrequent and gradually introduced); make simple work-related decisions; maintain appropriate appearance and hygiene; recognize and appropriately respond to hazards; work in the presence of others; accept supervision; and work best in situations that are slow paced and low volume (Tr. 733).

In January 2011, on reconsideration, state agency psychological consultant Robert de la Torre, Psy.D., completed a psychiatric review technique form (Tr. 739-52) and found that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 749). He also completed a mental RFC assessment form (Tr. 753-56), and in Section I, he checked the boxes that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods; moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and moderate limitations in her ability to interact appropriately with the general public (Tr. 753-54). In Section

III, Dr. de la Torre opined that Plaintiff was able to understand, remember, and carry out simple and one to four step detailed tasks but could not make independent decisions at an executive level. Within this restriction, Dr. de la Torre further opined that Plaintiff could concentrate and persist for a two-hour time period in an eight-hour day with customary breaks; interact appropriately with the general public, supervisors and peers; and independently set practical goals and adapt to routine workplace changes (Tr. 755).

In essence, Plaintiff's argument is that the ALJ's hypothetical to the VE should have included limitations that corresponded specifically with Dr. Neboschick's check-box findings in Section I of the mental RFC assessment form. This argument, however, misconstrues the purpose and function of the different sections in the mental RFC assessment form.

Section I of the mental RFC assessment form explains that it is "for recording summary conclusions derived from the evidence in the file" and directs that "[d]etailed explanation of the degree of limitation from each category . . . is to be recorded in Section III" (Tr. 731, 753). The Social Security Administration's Program Operations Manual Systems ("POMS") provides that Section I is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**"[4] *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 751 n.8 (E.D. Mich. 2015) (quoting Program Operation Manual System ("POMS") DI 24510.060(B)(2)(a) (emphasis in original)); *Joiakim v. Comm'r of Soc. Sec.,* No. 10-11079, 2011 WL 1120043, at *6 (E.D. Mich. Mar. 8, 2011) ("Section I of the mental assessment is merely a worksheet and does not constitute the RFC assessment."), *report and recommendation adopted*, No. 10-11079, 2011 WL 1134655 (E.D.

---

[4] "Although the POMS does not have the force of law, the Commissioner's interpretation of [her] own form in the POMS is entitled to deference and respect." *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-cv-109, 2013 WL 4014715, at *10 (E.D. Tenn. Aug. 6, 2013).

Mich. Mar. 25, 2011). Section III, entitled "Functional Capacity Assessment," contains the mental RFC determination of the state agency psychologists. *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-cv-109, 2013 WL 4014715, at *10 (E.D. Tenn. Aug. 6, 2013) (citing POMS DI 24510.060(B)(2), (4)) ("[A] claimant's RFC is recorded in section III of the form."). In general, the ALJ is not required to include the findings in Section I in formulating her RFC. *Id.* ("For the ALJ to also use the notations in section I of the mental RFC form as an assessment of Plaintiff's RFC or to determine Plaintiff's ability to return to his past relevant work would have been inappropriate and inconsistent with the instructions in the POMS."); *Helton v. Colvin*, No. 3:13 CV 00941, 2013 WL 6626867, at *9 (N.D. Ohio Dec. 16, 2013); *Velez v. Comm'r of Soc. Sec.*, No. 1:09 CV 0715, 2010 WL 1487599, at *6 (N.D. Ohio Mar. 26, 2010) ("[T]he ALJ is not required to include the findings in Section I in formulating residual functional capacity."), *report and recommendation adopted,* No. 1:09CV715, 2010 WL 1487729 (N.D. Ohio Apr. 13, 2010); *Liggett v. Astrue,* No. 08-1913, 2009 WL 189934, *7-8 (E.D. Pa. Jan. 27, 2009) (finding the ALJ properly did not include the summary conclusions in Section I in the hypothetical the ALJ posed to the VE); *Berry v. Astrue,* No. 1:08-cv-00005, 2009 WL 50072, at *15 (W.D. Va. Jan. 7, 2009); *Norris v. Astrue,* No. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov. 14, 2008) ("[T]he ALJ was not required to list factors appearing in section I in the hypothetical posed to the VE.").

Plaintiff relies on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), in support of her contention that the ALJ must include the findings in Section I of the state agency psychological consultant's mental RFC assessment in the hypothetical question relied on by the ALJ to support her finding that there were jobs Plaintiff could perform. In *Ealy*, the Court of Appeals for the Sixth Circuit remanded the matter because the streamlined hypothetical posed by

Case 1:15-cv-00204-TRM-SKL   Document 24   Filed 06/14/16   Page 11 of 26   PageID #: 1127

the ALJ to the VE did not include the restriction that claimant could work two-hour work segments during an eight-hour workday and that the speed of his performance could not be critical to the job and thus the VE's conclusion of the jobs that claimant could perform did not serve as substantial evidence that Plaintiff could perform the work. 594 F.3d at 516-17. The speed and pace limitations, which the ALJ had included in his RFC, were part of the mental RFC determination made by the state agency psychological consultant in Section III, not Section I, of the mental RFC assessment form. Here, contrary to *Ealy*, the additional limitations that Plaintiff argues should have been included in the hypothetical question relied on by the ALJ were not limitations that the state psychological consultants included in Section III of their assessments.

An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record.[5] *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The ALJ must determine which medical findings and opinions to credit and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). A court will not disturb an ALJ's RFC determination as

---

[5] A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945. In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

long as the finding is supported by substantial evidence.  *See Jones v. Comm'r of Soc. Sec.*, 336

F.3d 469, 477 (6th Cir. 2003).

Contrary to Plaintiff's claims, the ALJ properly considered the opinions of Dr.

Neboschick and Dr. de la Torre.  The ALJ gave great weight to Dr. de la Torre's RFC

assessment as being consistent with the medical evidence and concurred with his findings of

Plaintiff's moderate limitation in concentration, persistence, or pace and moderate limitation in

social functioning (Tr. 30-31, 33).  The ALJ determined that her RFC determination contained

adequate provisions to address both the moderate limitation in social functioning and the

moderate limitation in concentration, persistence, or pace and that no additional limitations were

necessary (Tr. 33).  The ALJ's RFC determination reasonably reflects the limitations opined by

the state agency psychological consultants in Section III of the forms and found by the ALJ to

reflect Plaintiff's credible limitations, and the ALJ was not required to discuss or include in her

RFC determination or in the hypothetical questions posed to the VE the findings discussed in

Section I of the mental RFC assessment.[6]

The ALJ limited Plaintiff to superficial contact with coworkers and the general public

(Tr. 32), which captures Dr. Neboschick's opinions that Plaintiff could work in the presence of

---

[6] In addition, Dr. Neboschick and Dr. de la Torre, properly considered and explained in Section III of their mental RFC assessments the moderate findings enumerated in Section I of their mental RFC assessment forms.  Their findings in Section I that Plaintiff had the "moderate ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" were incorporated into each of their mental RFC explanations and assessments in Section III.  Dr. de la Torre explained that Plaintiff "can concentrate and persist for a two-hour time period in an eight-hour day with customary breaks" within the other restrictions explained (Tr. 755), and Dr. Neboschick explained that Plaintiff could "sustain attention for simple, structured tasks for periods of 2 hour segments" and "work[] best in situations that are slow paced and low volume" (Tr. 733).  Thus, the ALJ did not ignore any moderate limitations identified in Section I of the mental RFC assessments as they were appropriately accounted for in the Section III narratives which the ALJ relied on in forming her RFC determination.

others and accept supervision (Tr. 733) and captures Dr. de la Torre's opinion that Plaintiff could interact appropriately with the general public, supervisors, and peers (Tr. 755). The ALJ also included in her RFC determination that Plaintiff was limited to simple, routine and repetitive tasks (SVP-1 to -2) (Tr. 32), which accommodates Dr. Neboschick's opinions that Plaintiff could understand and remember simple instructions; sustain attention for simple, structured tasks for periods of two-hour segments; and make simple work-related decisions (Tr. 733) and accommodates Dr. de la Torre's opinions that Plaintiff could understand, remember, and carry out simple and one to four step detailed tasks; concentrate and persist for a two-hour time period in an eight-hour workday with customary breaks; and independently set practical goals (Tr. 755). Finally, the ALJ included in the RFC that Plaintiff requires a low stress environment (Tr. 32), which accommodates Dr. Neboschick's opinions that Plaintiff could adapt to changes (noting it would be best if the change was infrequent and gradually introduced) and that she worked best in situations that are slow paced and low volume (Tr. 733) and accommodates Dr. de la Torre's opinion that Plaintiff could adapt to routine workplace changes (Tr. 755). The ALJ properly determined that the state agency consultants' opinions were entitled to great weight and sufficiently accounted for the Section III limitations opined by Dr. Neboschick and Dr. de la Torre in the RFC without adopting them verbatim.

The ALJ discussed in her decision the evidence that she considered, noting not only the medical source statements but also Plaintiff's medical history, the medical signs and laboratory findings, the effects of treatment, the reports of daily activities, recorded observations, and that Plaintiff had been discharged by multiple pain management providers (Tr. 32-33). These are the appropriate types of relevant evidence that the ALJ must consider in evaluating medical opinions and formulating an RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

14

Contrary to Plaintiff's contentions, the ALJ properly considered the opinions of the state agency psychological consultants and included limitations in the RFC that reflected Plaintiff's credible limitations. Accordingly, I **FIND** that the ALJ's RFC determination is supported by substantial evidence. Because the ALJ's hypothetical question included the limitations that she found credible and incorporated into her RFC determination, the ALJ could rely on the VE's testimony to support the finding that Plaintiff could perform jobs that exist in sufficient number in the national economy. *See Graley v. Comm'r of Soc. Sec.*, No. 15-3907, 2016 WL 1598603, at *4 (6th Cir. Apr. 21, 2016); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Thus, I **CONCLUDE** that the ALJ's determination that jobs existed in significant numbers in the national economy that Plaintiff could perform was supported by substantial evidence in the record.

## C.     New and Material Evidence

Plaintiff argues that she has submitted new and material evidence to the Court which meets the requirements for a sentence six remand pursuant to 42 U.S.C. § 405(g) and thus remand is appropriate [Doc. 18 at Page ID # 1057-58]. Plaintiff has submitted medical records from 2010, 2011, and 2015; a February 2, 2016 letter from Dr. Gregory Ball, a pain management specialist; and the Declaration of Steve B. McKnelly, her attorney's paralegal [Docs. 18-1 - 18-6]. Plaintiff argues that the information presented is new, and when considered together, it is material [Doc. 18 at Page ID # 1059]. Defendant counters that much of the evidence is not new; that the 2015 medical evidence, while new, is not material in that it was acquired after the relevant time period; and that the February 2, 2016 letter from Dr. Ball, while also new, is not material medical evidence in that it goes to the determination of credibility which is left to the ALJ [Doc. 23 at Page ID # 1112-15]. Defendant further argues that Plaintiff has failed to

establish "good cause" for not obtaining and submitting the evidence during the relevant period [Doc. 23 at Page ID # 1113, 1115].

More specifically, the documents at issue include (1) a July 15, 2015 MRI on Plaintiff's lumbar spine from Chattanooga Imaging [Doc. 18-1]; (2) a January 31, 2011 MRI on Plaintiff's lumbar spine from Chattanooga Imaging [Doc. 18-2]; (3) the Declaration of Steve B. McKnelly, a paralegal of Plaintiff's attorney [Doc. 18-3]; (4) a July 16, 2010 pain drawing made by Plaintiff at the Chattanooga Pain Surgery Center in conjunction with an epidural steroid injunction performed by Dr. Gregory Ball [Doc. 18-4]; (5) the June 28, 2010, July 12, 2010, and July 28, 2010 medical records of Dr. Ball at Consultants in Pain Management [Doc. 18-5]; and (6) the February 2, 2016 letter from Dr. Gregory Ball [Doc. 18-6]. The Declaration of Mr. McKnelly is not medical evidence; rather, Plaintiff offers the declaration "to explain the significance of new evidence discovered after the hearing had concluded" [Doc. 18 at Page ID # 1058].

"[R]emand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate 'only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."). Failure to establish any one of the three elements – new, material, and good cause – is fatal to the moving party's request. *Glasco v. Comm'r of Soc. Sec.*, No. 15-3964, 2016 WL 1460384, at *2 (6th Cir. Apr. 14, 2016). Courts "are not free to dispense with these statutory requirements." *Hollon v.*

16

*Comm'r of Soc. Sec.*, 447 F.3d 477, 486 (6th Cir. 2006). The burden of showing that a remand is appropriate is on the claimant, as the moving party. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). Here, Plaintiff fails to show that the evidence is new, material, and that she had good cause for failing to acquire and present the evidence to the ALJ during the administrative proceeding.

The medical records that existed prior to the ALJ's April 10, 2014 decision – the January 31, 2011 MRI [Doc. 18-2], the July 16, 2010 pain drawing [Doc. 18-4], and Dr. Ball's June 28, 2010, July 12, 2010, and July 28, 2010 medical records [Doc. 18-5] – are not new evidence as they were in existence at the time of the hearing and Plaintiff has not argued, and thus has failed to show, that the records were unavailable to her at the time of the administrative proceeding. Rather, Plaintiff contends they were not known to her counsel and were not discovered until 2015. Plaintiff argues that because she has "mental health problems, including poor memory, she should not be penalized for failure to remember all of her medical records back to 2010" [Doc. 18 at Page ID # 1059]. Plaintiff appears to offer the Declaration of Mr. McKnelly to

establish "good cause" by explaining that the records were unknown to Plaintiff's counsel, how they were discovered, and the due diligence Plaintiff's counsel exercised to obtain these documents once he learned of them. Mr. McKnelly attests that it was his belief and understanding that the records were complete when submitted to the SSA [Doc. 18-3 at Page ID # 1066].[7] Mr. McKnelly, however, does not explain what reasonable steps he took to formulate this belief. As Defendant points out, the declaration actually corroborates that these documents were in existence and were available to Plaintiff at the time of the administrative proceeding.

Defendant contends that Plaintiff had the duty to produce the evidence in support of her claim and failed to do so [Doc. 23 at Page ID # 1112]. Defendant points out that Plaintiff was able to provide Dr. Ball's contact information and treatment dates so that her attorney obtained Dr. Ball's July 16, 2010 treatment records [Doc. 23 at Page ID # 1113 (citing (Tr. 820-21)]. This would have been the same day that Plaintiff made the pain drawing. The July 16, 2010 treatment note, which is contained in the administrative record, indicates that Plaintiff was supposed to follow up with her appointment to Dr. Ball's pain clinic "as scheduled" (Tr. 821), which presumably referred to a subsequent appointment possibly the July 28, 2010 appointment at issue here. Defendant further points out that, when Plaintiff applied for disability benefits on June 8, 2010, she was contemporaneously seeking treatment from Dr. Ball so the treatment records from

---

[7] Plaintiff informed her counsel that she had an MRI taken at Chattanooga Imaging on July 15, 2015 [Doc. 18-3 at Page ID # 1066]. Upon obtaining a copy of that MRI, Mr. McKnelly realized that it had been compared to a January 31, 2011 MRI [*id.*]. This led him to make several re-newed records requests to Chattanooga Imaging, resulting in "two additional MRIs, the January 31, 2011 MRI and the July 1, 2010 MRI" [*id.* at Page ID # 1067]. It appears that the July 1, 2010 MRI has not been included as "new" evidence. There is no further reference to the July 1, 2010 MRI in Plaintiff's brief. Mr. McKnelly also made a re-newed records request to Dr. Ball's office which resulted in the pain drawing and the additional 2010 medical records [*id.*].

June and July 2010 should have been fresh on her mind in fulfilling her duty to provide the medical records from his office in support of her claim [Doc. 23 at Page ID # 1113].

Additionally, in completing her "Disability Report – Appeal – Form SSA – 3441", Plaintiff referred to an MRI of her neck and lower back which she said was performed in February 2011, which would have been the January 31, 2011 MRI at issue here (Tr. 387).[8] Plaintiff has not provided any explanation or "good cause" why she remembered the 2011 MRI at the time of submitting the disability report but then failed to make sure that it was part of the administrative record for her case.[9] Defendant contends that there is no excusable reason for Plaintiff's failure to submit the 2011 MRI report [Doc. 23 at Page ID # 1113]. The burden of providing a complete record rests on the claimant. *Foster*, 279 F.3d at 357; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

Accordingly, I **FIND** that the 2010 and 2011 records at issue here were in existence at the time of the ALJ's decision and they were available to Plaintiff, and thus they are not "new"

---

[8] Plaintiff was updating the last disability report she provided to the Commissioner on November 23, 2010, because she claimed her condition had gotten worse since the last report (Tr. 385).

[9] During the administrative hearing with Plaintiff present, Plaintiff's attorney requested and received permission from the ALJ to keep the record open for 45 days so that Plaintiff could submit a new MRI of Plaintiff's lumbar spine to compare with the 2009 MRI, which Plaintiff's counsel explained was the most recent MRI in the record (Tr. 48-51). As supported by the information that Plaintiff provided to the SSA in 2011, Plaintiff was aware of the 2011 MRI. Plaintiff's counsel submitted the February 10, 2014 MRI to the ALJ, and it became part of the administrative record. The ALJ noted in her opinion that the 2014 MRI scans of Plaintiff's lumbar spine "showed mild degenerative changes plus a stable fusion from 2001" (Tr. 30). The scan showed "mild clumping of the nerve roots from the L4 through S1 intervals suggesting changes of possible mild arachnoiditis" (Tr. 965). Plaintiff argued that this showing compelled a different result, but the ALJ was not persuaded by Plaintiff's argument, finding "her reported symptoms have not materially changed over the time covered by the consultative examiner's reports and this newer finding" (Tr. 33). Plaintiff's contention that the 2011 MRI is material because it adds additional evidence of the possibility of arachnoiditis [Doc. 18 at Page ID # 1060] fails because the ALJ addressed and disregarded this issue in discussing the 2014 MRI and thus it is highly unlikely that the 2011 MRI would have changed the ALJ's conclusion on this issue or determination on disability.

evidence.  Plaintiff has demonstrated her ability to provide information to the SSA about her treatment with Dr. Ball and her 2011 MRI.  That her attorney was unaware of these records until 2015 does not make them unavailable to Plaintiff and does not relieve Plaintiff of her duty to furnish existing evidence in support of her claim at the administrative level.  Since the 2011 MRI, the 2010 pain study, and Dr. Ball's three 2010 treatment notes are not new evidence, they cannot support a sentence six remand.  Plaintiff has also failed to show "good cause" for her failure to present these records prior to the ALJ's decision, especially when the ALJ held open the administrative record for an additional 45 days for Plaintiff to have, and provide a copy of, a new MRI.

The July 15, 2015 MRI scan of Plaintiff's lumbar spine [Doc. 18-1] and the February 2, 2016 letter from Dr. Ball [Doc. 18-6] are new evidence in that they were not in existence as of April 10, 2014, the date of the ALJ's decision.  The Court must determine if they are material, meaning that there is a reasonable probability that the ALJ would have found Plaintiff disabled if the new evidence had been presented at the time of the administrative proceeding, and whether Plaintiff has shown "good cause" for not acquiring and presenting the evidence during the administrative proceeding.

Plaintiff generally argues that the 2015 MRI, along with the 2011 MRI and the 2010 pain drawing, is material because it establishes the possibility of arachnoiditis, which could increase Plaintiff's pain [Doc. 18 at Page ID # 1059-60].  Defendant counters that the July 15, 2015 MRI is not material because it was acquired after the ALJ's decision on April 10, 2014, and has no bearing on the relevant time period under consideration by the ALJ [Doc. 23 at Page ID # 1114].  The SSA regulations provide that applications for DIB and SSI are effective through the date of the ALJ's decision.  *See* 20 C.F.R. §§ 404.620 & 416.330 ("If there is an administrative law

judge hearing decision, your application will remain in effect until the administrative law judge hearing decision is issued."). To the extent the 2015 MRI indicates Plaintiff's condition has become more severe after the relevant time period, "evidence that a Plaintiff's health has deteriorated since the Commissioner's decision is not material to that application, and the appropriate remedy is to file a new application." *Farler v. Astrue*, No. 1:10-cv-657, 2011 WL 3715047, at *6 (S.D. Ohio, W. Div. July 29, 2011); *Wyatt v. Secretary of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."). Since the ALJ considered the 2014 MRI and the possibility of arachnoiditis Plaintiff has failed to show how the 2015 MRI taken over a year after the ALJ's decision would have reasonably persuaded the ALJ to change her determination about Plaintiff's condition during the relevant time period. Additionally, Plaintiff has not provided an explanation to establish "good cause" for this new evidence and arguably cannot establish 'good cause" when the ALJ held open the record for Plaintiff to acquire and present a new MRI in 2014. The fact that new evidence is created after the ALJ's decision will not alone establish "good cause." *See Oliver*, 804 F.2d at 966. Accordingly, I **FIND** that, while the 2015 MRI is "new," it is not "material," and Plaintiff has failed to establish "good cause."

Regarding Dr. Ball's 2016 letter, Plaintiff's counsel asked Dr. Ball to review four MRIs from 2009 through 2015 of the Plaintiff's lumbar spine and to provide an explanation of how the pain attributes of arachnoiditis might affect Plaintiff's ability to perform a sustained workday and workweek [Doc. 18 at Page ID # 1059]. Plaintiff contends that "Dr. Ball's explanation of the consistency of the pain drawing with the findings on four different MRI's [sic] between 2009 and 2015 bears on the question of [Plaintiff's] credibility as to the supporting medical evidence

of the intensity, persistence and limiting effect of her symptoms" [*id.* at Page ID # 1059-60].

Plaintiff argues that "the additional evidence provided is material because of the probability that it would have changed the ALJ's ruling in this case" [*id.*]. Defendant counters that the February 2, 2016 letter from Dr. Ball is not material because it is not a relevant medical opinion but merely a conclusory opinion arguing in support of Plaintiff's claim [Doc. 23 at Page ID # 1114]. Defendant also contends that Plaintiff has not attempted to explain any "good cause" for not obtaining Dr. Ball's letter during the relevant time period [Doc. 23 at Page ID # 1115].

The determination of Plaintiff's credibility as to her allegations of disabling pain is left to the ALJ and is generally binding on the reviewing court.[10] An ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the

---

[10] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, effective March 16, 2016, which supersedes SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect on March 16, 2016, almost two years after the ALJ issued her decision on April 10, 2014, and therefore is not applicable to the ALJ's decision in this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007) ("We are not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in the federal courts, absent, of course, ex post facto or due process concerns not present here."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations." (citing 42 U.S.C. § 405(a))). The text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively. Moreover, SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter.

reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

The ALJ determined that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible (Tr. 32).[11] The ALJ found that repeated x-rays and MRI scans found only mild degenerative changes (Tr. 32). As noted above, the ALJ held open the record for 45 days after the December 19, 2013 hearing so that Plaintiff

---

[11] The ALJ's credibility analysis is "inherently intertwined" with the RFC assessment. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

could obtain another MRI scan of her back (Tr. 47-51).[12]  The 2014 MRI scan along with its suggestion of possible mild arachnoiditis was part of the administrative record that the ALJ considered and discussed in her April 10, 2014 opinion (Tr. 33).

The ALJ stated that Plaintiff's activities of daily living were not consistent with the constant lower back pain she alleged (Tr. 32).  The ALJ noted specifically that Plaintiff reported acute injuries from riding a four-wheeler and from playing on a bouncy slide (Tr. 32).  The ALJ also found that Plaintiff's overall credibility was hurt by her being discharged by multiple pain managers, by the fact that the consultative examiner's findings were not significantly contradicted by the medical evidence, and that no treating physician opined that she had disabling limitations (Tr. 32-33).  The ALJ was "not persuaded by [Plaintiff's] counsel's argument that recent evidence [in the 2014 MRI] of possible mild arachnoiditis compels a different result, as [Plaintiff's] reported symptoms have not materially changed over the time covered by the consultative examiner's reports and this newer finding" (Tr. 33).

Dr. Ball's February 2, 2016 letter discussed that Plaintiff's last visit to his practice was on July 28, 2010, and during that visit "the medication count revealed compliance issues – out of medication early, unsanctioned dose escalation and medications used at an accelerated rate" [Doc. 18-6 at Page ID # 1093].  Dr. Ball's "new" letter which was written almost two years after the ALJ's decision and almost six years after he last examined or treated Plaintiff provides his opinion of Plaintiff's credibility as to her allegations of pain during the relevant time period.  The determination of Plaintiff's credibility as to the intensity, persistence, and limiting effects of her alleged pain, however, is entrusted to the ALJ.  The ALJ considered evidence of arachnoiditis as

---

[12] The ALJ was clear that the SSA does not "keep a disability [claim] open for a person to establish their disability.  They should have established that when [the claim is] originally filed . . . [and the ALJ won't] keep the record open indefinitely for . . . [Plaintiff] to accrue evidence" (Tr. 50).

24

presented in the 2014 MRI and found it to be unpersuasive.  Plaintiff has failed to sufficiently explain how Dr. Ball's 2016 letter reasonably could have changed the ALJ's ruling. Accordingly, I **FIND** that Plaintiff has failed to meet her burden of showing that the "new" evidence is material.

Alternatively, Plaintiff has not attempted to explain any "good cause" for not obtaining Dr. Ball's letter during the relevant time period.  "Good cause" is not established solely because the new evidence was not created until after the ALJ's decision.  *See Oliver*, 804 F.2d at 966. Dr. Ball treated Plaintiff in June and July 2010, immediately after she filed her claim for benefits in June 2010.  Plaintiff has failed to explain why she waited almost six years to have Dr. Ball submit an opinion on Plaintiff's allegations of pain and ability to work.  *See Cutler v. Colvin*, No. 3:14-cv-1149, 2015 WL 5554844, at *10 (M.D. Tenn. Sept. 21, 2015) ("The Sixth Circuit takes a 'harder line' on the good cause test, requiring a 'valid reason' for not procuring and submitting evidence prior to the ALJ hearing.").  Accordingly, I **FIND** that Plaintiff has failed to establish "good cause" for not obtaining and presenting Dr. Ball's opinion testimony during the relevant time period.

As Plaintiff has failed to meet her burden of showing that the evidence she has submitted to the Court is new, material, and that she had "good cause" for not acquiring and presenting the evidence to the ALJ at the time of the administrative proceeding, I **CONCLUDE** there is no basis to remand Plaintiff's claim pursuant to sentence six of 42 U.S.C. § 405(g).

## V.   CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[13] that:

1) Plaintiff's motion for summary judgment [Doc. 17] be **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 22] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.


s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[13] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).